# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Jonathan A. Call, | : | Case No. 3:05CV0158 |
| | : | |
| Petitioner | : | Judge Dan Aaron Polster |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Rob Jeffries, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this *pro se* action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his February 10, 2003 conviction pursuant to a jury trial of two counts of aggravated arson, upon which he is serving concurrent sentences of seven years incarceration on each count, with five years of post-release control.[1]  Petitioner was also ordered to pay restitution in the amount of $43,000.

On February 24, 2003 petitioner filed *pro se* a motion for new trial and a motion for acquittal,  which were denied by the trial court on March 28 and February 25, 2003, respectively. In his motion for new trial petitioner argued that the investigating officers and other prosecuting witnesses perjured themselves at trial.

---

[1]Petitioner's previous trial on two counts of aggravated arson, one count of intimidation and one count of retaliation, ended on November 19, 2002 with the jury acquitting him of the intimidation and retaliation charges, but finding themselves unable to reach a verdict on the arson charges.  His arson convictions were upon retrial. During the pendency of the case, numerous pretrial motions and motions for reconsideration were filed on petitioner's behalf.

1

On April 25, 2003 petitioner filed *pro se* a number of motions including a motion for reconsideration of the denial of his motion for a new trial, all of which were denied on April 28, 2003, with the trial court finding in pertinent part that the court had previously appointed the Ohio Public Defender to represent petitioner on appeal, had previously approved funds for transcript expenses, and had previously considered petitioner's motion for a new trial so that res judicata precluded further review.

On July 25, 2003, and again on September 12, 2003, petitioner filed *pro se* with the trial court motions to suspend the court costs, fees and restitution imposed by the trial court during sentencing, which were all summarily denied.

Petitioner, who was represented by counsel, appealed his convictions to the Ohio Third District Court of Appeals alleging the following assignments of error:[2]

> I.  Mr. Call's defense was prejudiced by the statements by the prosecutor designed to inflame the passions of the jury and create improper bias in violation of due process of law as defined under the Fifth and Fourteenth Amendments to the United States Constitution.

> II.  Mr. Call's defense was prejudiced by the improper testimony of an assistant county prosecutor in violation of his rights under the Fifth and Fourteenth Amendment to the United States Constitution.

> III.  Mr. Call was convicted in violation of the Fifth and Fourteenth Amendment because Mr. Call was found guilty based on insufficient evidence and against the manifest weight of the evidence.

On January 27, 2004 the state appellate court affirmed the judgment of the trial court.    On

---

[2]During the pendency of his appeal, petitioner filed *pro se* with the court a motion requesting the release of copies of audio tapes of all proceedings in his criminal case.  Noting that petitioner was represented by counsel, the court denied the motion.  There was an ongoing problem throughout all of his state court proceedings with petitioner filing *pro se* motions, many of which were duplicative and not well-taken, despite being represented by counsel.

2

February 19, 2004 petitioner's motion for reconsideration was denied by the appellate court.

On March 11, 2004 petitioner, now acting *pro se*, appealed the state appellate court ruling to the Ohio Supreme Court alleging the following four propositions of law:

> **Proposition of Law No. I:** When during the course of trial, a prosecutor (A) violates explicit Court orders regarding prohibited testimony, (B) calls an assistant prosecutor intimately involved with the case to give testimony regarding unsubstantiated hearsay for the sole purpose of rehabilitating the witness, where the witness was a declarant available to testify but was excused, and (C) commits numerous similar acts of misconducts, the conviction must be reversed on grounds that the conviction was obtained by Prosecutorial Misconduct, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitutions and in violation of Article 1, Section 16, of the Ohio Constitution.

> **Proposition of Law No. II:** Where a conviction is obtained by building inference upon inference, using disputed or unproven facts, the evidence is insufficient to sustain a conviction, and a conviction so obtained must be reversed.

> **Proposition of Law No. III:** Where a criminal Defendant claims that a conviction is contrary to the manifest weight of the evidence, is secured with insufficient evidence, or both, the Court of Appeals must review the <u>entire</u> record on appeal, and its Opinion must accurately reflect the record on appeal.

> **Proposition of Law No. IV:** Where it is demonstrated that Police and lay witnesses for the State committed perjury, falsehoods and misstatements, misrepresentations during their testimonies, the conviction is against the manifest weight of the evidence.

On June 4, 2004 the court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

After the appellate court denied his attempt at reconsideration of his direct appeal, but prior to appealing in the state supreme court, petitioner filed *pro se* on February 23, 2004 a motion for extension of time to file an application to reopen his direct appeal pursuant to Rule 26(B) of the

3

Ohio Rules of Appellate Procedure and a motion to supplement the record, which the court denied on March 8, 2004 finding that no Rule 26(B) application for reopening had been filed and there was "no good cause for an extension of time [to file such an application] at this early state of the matter."  The court also held that petitioner could not "supplement the record" as he requested, in light of the fact that there was no pending case at that point.

Undaunted by the denial of his motion for extension, petitioner filed *pro se* a Rule 26(B) application to reopen, alleging he was denied the effective assistance of appellate counsel due to: (1) counsel's failure to obtain trial transcripts and audio recordings; (2) counsel's failure to argue on direct appeal the ineffective assistance of trial counsel; and (3) counsel's failure to raise seven issues as assignments of error.  On June 8, 2004 the appellate court denied petitioner's application, finding no genuine issue as to whether he had been denied the effective assistance of appellate counsel.

Petitioner appealed to the state supreme court that denial of his Rule 26(B) application raising the following sole proposition of law:

> **Proposition of Law No. I:** For Due Process to operate effectively in the State of Ohio when an Appellant, in a App.R. 26(B) motion, raises Constitutional errors of great magnitude that appellate counsel did not include in the direct appeal, the appellate court must allow the Defendant-Appellant leave to re-open the appeal to further demonstrate the merit of the issues raised in his App.R. 26(B) motion for leave to appeal.

On September 29, 2004 the court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

During the pendency of his Rule 26(B) application to reopen, on April 27, 2004 petitioner filed *pro se* a petition for writ of mandamus in which he argued that the appellate court should

order the trial court to provide him with a certified copy of the audiotapes of his criminal proceedings without charge.  On June 8, 2004, the appellate court dismissed the petition, finding that petitioner had "no legal right to 'free' copies" and that the audiotapes had been made available for copying for the actual cost plus postage.

On July 6, 2004 petitioner appealed to the state supreme court the dismissal of that petition, alleging the following propositions of law:

> **Proposition of Law No. I:** When an Appellate Court denied the Defendant correction of the inaccuracies of the record concerning testimony at the Defendant's trials and proceedings by not allowing him certified audiotape copies of the trials and proceedings, that Court is thereby violating the Defendant-Appellant's Due Process rights under the Fourteenth Amendment of the United States Constitution and Article 1 section 16 of the Ohio Constitution.

> **Proposition of Law No. II:** When the Appellate Court denies a Defendant-Relator access, free of costs, to the same materials that the State Prosecutor is allowed to access, free of costs, being Audiotapes of the Defendant-Appellant's trials and proceedings, the Appellate Court is then violating the Defendant-Relator's right to equal protection and access to the courts under law in both the U.S. and Ohio constitutions.

> **Proposition of Law No. III:** When the Relator-Appellant has been denied copies of Audiotapes of his trials and proceedings, free of costs due to his indigency, for purposes of transcription and appeal preparation, after the Defendant-Appellant was denied in camera inspection by the trial court to correct the omitted/deleted transcripts that are on record at the appellate court pursuant to App.R. 9, the omitted/deleted portions of testimony, that if included in the transcripts would have risen to errors of great constitutional magnitude, due to the perjury of three (3) Marion City Police Officers from one trial to the next, and various inconsistent testimony from State's witnesses.  Inconsistency/Perjury that has been proven by five (5) affidavits from the public present at the Defendant's trials and proceedings, and affiant's have attested to the omissions and deletions in the transcripts on record constitutes a denial of the Defendant-Appellant's Due Process and Access to the courts, rights that are guaranteed under Ohio and United States

5

Constitutions.

On December 15, 2004 the court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question due to the fact that the trial court had already provided to the petitioner a free copy of the transcripts.

Petitioner filed *pro se* on June 10, 2004, during the pendency of his Rule 26(B) application and his petition for writ of mandamus, a third motion requesting that the trial court suspend the court costs, fees and restitution imposed during sentencing.   That motion was denied on June 15, 2004.   Petitioner appealed that decision, arguing that although he was indigent throughout the proceedings his status as an indigent was never determined by the trial court at sentencing.   On October 25, 2004 the appellate court affirmed the denial of that motion, finding it barred by res judicata since it could have been raised in his first appeal but was not, and, in the alternative, the court found the argument raised by petitioner to be "completely without merit."   Petitioner's motion for reconsideration of that ruling was denied on December 2, 2004.

Petitioner appealed to the state supreme court the foregoing denial of his third motion to vacate, alleging the following three propositions of law:

> **Proposition of Law No. I:** Res-Judicata does not apply when the
> following Due Process and Constitutional errors occur:
>
> (1)     The time to appeal does not run until the Clerk of
>          Courts assesses a garnishment or levy against an
>          indigent Defendant-Appellant's prison account,
>          when said garnishment or levy occurs after
>          sentencing and appeal is concluded.
>
> (2)     When trial counsel does not object at sentencing to
>          the imposition of court costs, fees and/or restitution
>          upon an indigent defendant, and appellate counsel
>          does not raise an error of issue concerning same on
>          appeal, this type of representation constitutes

6

ineffective assistance of counsel under the *Strickland* test.

**Proposition of Law No. II:** The appellate court cannot deny due consideration to an Appellant based upon alleged lack of transcripts in the record, when the appellate court, being the keepers of the records, are already in possession of the sole copy of the transcripts, filed in a previous appeal, transcripts that are not available to the indigent pro-se litigant.

**Proposition of Law No. III:** The trial and appellate court cannot impose/enforce restitution to an indigent defendant naming an insurance company as a third party. Thereby misconstruing R.C. §2929.18, when that reading of said statute puts it in conflict with R.C. §2743.51 et seq., which defines an insurance company as a collateral source, not to be considered a third party, therefore not eligible for restitution.

On March 2, 2005 the court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

During the pendency of his third motion to vacate or suspend the court costs, fees and restitution imposed during sentencing, on August 12, 2004 petitioner filed *pro se* a second motion requesting that the court conduct an in camera inspection of audiotapes of the trial court proceedings. Four days later he filed a motion to attach exhibits to that motion. Both motions were denied by the trial court on August 31, 2004.

Petitioner appealed the denial of those motions, but on September 30, 2004 the appellate court *sua sponte* dismissed the appeal, determining that petitioner had previously filed an identical motion which had been denied by the trial court on January 5, 2004 and which had not been appealed. The court held that there was no substantial right affected by the denial of petitioner's duplicative motions, as there is no constitutional right to have the trial court review transcripts "long after the conviction and sentence were affirmed on appeal."

Petitioner filed with the state supreme court an appeal of the foregoing dismissal of his appeal, but it was dismissed as not involving a substantial constitutional question.

On January 23, 2005 petitioner filed the instant *pro se* petition for writ of habeas corpus, in which he alleges the following fourteen grounds for relief:

A.  **Ground One:** Conviction obtained by improper State Prosecutor statements, misconduct during trial, and during direct testimony from State witnesses, violating Defendant's right to cross-examine State witness in violation of confrontation clause of Sixth Amendment, Fair Trial and Due Process violations.

B.  **Ground Two:** Conviction obtained based upon insufficient evidence and against the manifest weight of the evidence.

C.  **Ground Three:** The Third District Appellate Court and the Supreme Court of Ohio denied the Defendant right to due process and equal protection to appeal by not allowing Defendant full transcripts of the first trial and proceedings.

D.  **Ground Four:** Conviction obtained in violation of the protection against Double Jeopardy and/or Collateral Estoppel Doctrine, and violation of Ohio Revised Code 403, 404, 802 respectfully [sic].

E.  **Ground Five:** Denial of effective assistance of Appellate Counsel.

F.  **Ground Six:** Denial of effective assistance of trial counsel.

G.  **Ground Seven:** Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

H.  **Ground Eight:** Conviction obtained by a violation of the protection against Double Jeopardy.

I.  **Ground Nine:** Court costs, attorney fees and restitution were assessed and garnished from a Defendant without determining his ability to pay violating due process and equal protection causing an immediate undue hardship. Also violating Ohio Statutes concerning imposing

8

restitution to an insurance company against Ohio statute.

**J.  Ground Ten:** Conviction obtained without the State providing the elements of Agg. Arson violating due process and the right to a fair trial.

**K.  Ground Eleven:** Conviction was obtained by police and State witness testifying falsely (perjury) to mislead the jury, with the prosecutor having knowledge of and directing said falsehoods/misstatements and or perjury.

**L.  Ground Twelve:** Denial of Equal Protection and Due Process and access to the courts occurred when the Defendant attempted to get the audiotapes of his trials and proceedings from the courts, to correct transcripts that had omitted/deleted portions of the testimony that was given at the Defendant's trials and proceedings.

**M.  Ground Thirteen:** Equal Protection, Due Process were denied the Defendant Appellant when court costs and fees and restitution were imposed creating an undue hardship upon the Defendant.

**N.  Ground Fourteen:** Denial of right of appeal and due process and equal protection to be able to appeal.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).

Respondent argues that petitioner has procedurally defaulted the issues presented in his first, fourth, sixth through eleventh, and thirteenth claims for relief and, therefore, those claims should be dismissed.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he may seek relief based upon an alleged violation of constitutional

9

rights.  Granberry v. Greer, 481 U.S. 129, 133 (1987).  Such doctrine, although not of a jurisdictional nature, is based upon issues of comity, allowing the state courts the opportunity to correct any constitutional violation that may have occurred in its courts, as well as creating a complete record for review should the case eventually be heard in federal habeas corpus.  Hafley v. Sowders, 902 F.2d 480, 482 (6th Cir. 1990).  So long as the state procedures provide an available remedy for the petitioner to pursue he or she has not exhausted state remedies.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).

While lack of any further available state remedies satisfies the exhaustion requirement, it does not necessarily ensure a federal forum in habeas corpus.

As it is the task of this federal court to only consider claims which were adjudicated on the merits in the state courts, this court generally may not address claims which were not substantively analyzed by the state courts, either due to failure to raise them before the state courts while a remedy was available or due to a state procedural rule precluding merits review of such claim.  Claims which fall into that category are procedurally defaulted and may be barred from consideration on federal habeas review.  Lancaster v. Adams, 324 F.3d 423, 436 (6th Cir. 2003), citing Seymour v. Walker, 224 F.3d 542, 549-50 (6th Cir. 2000).

The Sixth Circuit Court of Appeals has delineated a four-part test for determining whether a habeas petitioner's claim is procedurally defaulted by the failure to observe a state procedural rule.  First, the district court must determine whether there exists a state procedural rule with which the petitioner failed to comply.  Then the court must determine whether the state court enforced the sanction for failure to comply.  If so, it must next be decided whether failure to comply with the state procedural rule constitutes an adequate and independent ground for barring review of the

10

federal constitutional claim. If all these questions are answered in the affirmative, the petitioner must satisfy the requirements set forth in Wainwright v. Sykes, 433 U.S. 72, 138 (1977) that he demonstrate cause for having failed to follow the procedural rule in question and that he was actually prejudiced by the alleged constitutional error. Greer v. Mitchell, 264 F.3d 663, 672-73 (6th Cir. 2001), cert. denied, 535 U.S. 940 (2002); Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986). Accord, Lancaster v. Adams, supra at 436.

Procedural default may also occur when a petitioner fails to "fairly present" his constitutional claim to the state supreme court. "A petitioner must 'fairly present' the substance of each of his federal constitutional claims to the state courts before the federal courts will address them." Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995). Fair presentation of a federal constitutional issue to the state's highest court must be in the guise of a federal constitutional question either by direct citation to federal cases employing constitutional analysis or to state cases relying on constitutional analysis in similar fact patterns. Id.; Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). With respect to a claim for ineffective assistance of trial counsel the specific factual instances of counsel's alleged ineffectiveness must be presented to the state courts in order for those claims to be deemed fairly presented. Forest v. Delo, 52 F.3d 716, 721 (8th Cir. 1995); Burns v. Estelle, 695 F.2d 847 (5th Cir. 1983).

Failure to fairly present an issue to the state courts results in waiver of that claim and in order to gain access to habeas review of such a waived claim a petitioner must demonstrate cause to excuse the waiver and actual prejudice to his/her defense. Coleman v. Thompson, 501 U.S. 722, 750-51 (1991).

In his first claim for relief the petitioner alleges that seventeen incidents of prosecutorial

11

misconduct at his trial caused him to be deprived of his constitutional rights.  As the basis of his claim of prosecutorial misconduct on direct appeal, however, petitioner only relied on assertions made during the prosecutor's opening statement regarding petitioner's having been arrested and held in jail for a few days, as well as statements made during closing argument which appeared to be directed to a particular juror, referring to the Columbia space shuttle tragedy.  Those two claims of prosecutorial misconduct, presented in these proceedings as the fifth and ninth alleged incidents of prosecutorial misconduct, were fairly presented to the state courts for review but, applying the foregoing authorities delineating when a claim is "fairly presented," the remaining claims were not, as they were not included in the rationale for the prosecutorial misconduct claims presented to the state courts.[3]  Petitioner would now be foreclosed from raising them in the state courts due to the longstanding Ohio procedural rule that a claim which could have been but was not raised on direct appeal will be barred from being raised in a delayed appeal or in a petition for post-conviction relief.  See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978).

Having failed to fairly present to the state courts all but the fifth and ninth examples of prosecutorial misconduct raised herein, those claims for relief have been procedurally defaulted.

Although petitioner's ninth example of prosecutorial misconduct, referring to the prosecuting attorney's comment during closing argument about the Columbia space shuttle tragedy, was argued on appeal the appellate court held:

> As a preliminary matter, we note that the defense failed to make

---

[3]The sixth alleged incident of prosecutorial misconduct referring to the assistant prosecutor having testified at petitioner's second trial, was presented to the state appellate court as an independent claim of error as opposed to an underlying rationale for a claim of prosecutorial misconduct. If a petitioner fails to present claims of constitutional violations premised on the same theories as those raised in the state courts, those claims will be deemed as procedurally defaulted.  Wong v. Money, supra at 322; Pillette v. Foltz, 824 F.2d 494, 497 (6th Cir. 1987); Prather v. Rees, 822 F.2d 1418, 1421 (6th Cir. 1987).

> objections to the contested statements regarding the Columbia space shuttle and the directed statement to an individual juror. Accordingly, these allegations were not properly preserved for appeal and are waived. See *State v. DeNicola* (1955), 163 Ohio St. 140, paragraph three of the syllabus; *State v. Wogenstahl* (1996), 75 Ohio St.3d 344. Thus we review for plain error only. Crim.R. 52(B).

Applying the four-part Maupin analysis to the foregoing, petitioner failed to comply with Ohio's contemporaneous objection rule[4] and no plain error was found. Ohio courts enforce the contemporaneous objection rule, and to the extent that the state appellate court did so that was an adequate and independent ground on which that court could rely to preclude merits consideration of these claims. Scott v. Mitchell, 209 F.3d 854 (6th Cir. 2000), cert. denied, 531 U.S. 1021 (2000) (Ohio's contemporaneous objection rule is an adequate and independent state ground under Maupin). Therefore, petitioner's ninth example of prosecutorial misconduct has also been procedurally defaulted in these proceedings.

Petitioner's fourth, sixth, seventh, eighth and tenth claims for relief raised in these proceedings were not raised by petitioner as independent claims for relief on direct appeal in the state court, despite the fact that he was represented by different counsel on appeal than had represented him at trial. He did raise those claims in his Rule 26(B) application to reopen his appeal as underlying rationale for his assertions of ineffective assistance of appellate counsel. However, having failed to raise the claims as independent claims for relief as they are raised in these proceedings, those claims have been procedurally defaulted. Pillette v. Foltz, supra at 497.

The issue posed in petitioner's eleventh claim for relief was only raised in his allegations of perjured testimony in his *pro se* motion for a new trial and in the addendum thereto, the denial

---

[4]That rule can be found in State v. Campbell, 69 Ohio St.3d 38, 630 N.E.2d 339 (1994).

13

of which was not appealed by petitioner.  He did not raise this claim in his direct appeal of his conviction, but did raise it as his fourth proposition of law to the state supreme court.   The state supreme court does not consider issues that were not raised in the lower appellate court.  Portage County Board of Commissioners v. City of Akron, 109 Ohio St.3d 106 (2006).  Once again, a claim which could have been but was not raised on direct appeal will be barred from being raised in a delayed appeal or in a petition for post-conviction relief.  Collins v. Perini, supra.  Having failed to raise it at the first opportunity on direct appeal, the issue is procedurally defaulted.

In his ninth and thirteenth claims for relief petitioner argues that he was denied his constitutional rights by reason of the trial court's numerous refusals to vacate or suspend the costs, fees and restitution imposed upon him at sentencing.  Those motions, filed in July and September of 2003, were denied and the denials were not appealed.  When petitioner filed his third such motion nearly a year later in July of 2004 it was denied,  and when he appealed that decision the appellate court found that the third motion to vacate or suspend was barred by res judicata, as the issues could have been, but were not, raised on direct appeal of the first denial.  Applying the Maupin factors, res judicata being an adequate and independent basis upon which Ohio courts regularly deny review, these claims for relief are procedurally defaulted.  Rust v. Zent, 17 F.3d 155, 160-61 (6th Cir. 1994);  Dennis v. Mitchell, 68 F.Supp.2d 863 (N.D.Ohio 1999).

Each of the foregoing claims for relief having been procedurally defaulted, either by reason of having failed to fairly present to the state courts the factual and legal basis for the claims, or by raising them but having the state courts reject them as a consequence of failure to follow state procedural rules, the petitioner is required to demonstrate cause for the procedural default and actual prejudice to his defense at trial or on appeal. Gray v. Netherland, 518 U.S. 152, 162 (1996);

14

Coleman v. Thompson, 501 U.S. 722, 750 (1991); Teague v. Lane, 489 U.S. 288, 298-99 (1989);
Deitz v. Money, 391 F.3d 804, 808 (6th Cir. 2004); Clifford v. Chandler, 333 F.3d 724, 728 (6th
Cir. 2003), cert. denied, 124 S. Ct. 1601 (2004), overruled in part on other grounds by Wiggins v.
Smith, 539 U.S. 510 (2003); Alley v. Bell, 307 F.3d 380, 388 (6th Cir. 2002), cert. denied, 540
U.S. 839 (2003).  Petitioner addressed the issue of procedural default in his reply to respondent's
opposition to petitioner's motion to supplement the record, but failed to make the required showing
of cause and prejudice, instead arguing that there was no procedural default.

Furthermore, while it is true that a petitioner  who has not shown cause and prejudice may
still convince a court to consider the defaulted claims for relief by producing new evidence that
a constitutional violation has probably resulted in a conviction of one who is actually innocent,
Dretke v. Haley, 541 U.S. 386 (2004), petitioner has made no such showing.

In light of petitioner's failure to produce evidence either of cause and prejudice for his
procedural defaults or of his actual innocense, it is recommended that petitioner's first, fourth,
sixth through eleventh, and thirteenth claims for relief be dismissed.

Having found those claims to have been procedurally defaulted, this Court now turns to a
review of the merits of the first (only the fifth alleged example of prosecutorial misconduct),
second, third, fifth, twelfth and fourteenth claims for relief.

In the remaining portion of his first claim for relief, petitioner argues that the prosecutor's
reference during his opening statement to petitioner's arrest and time spent in jail amounted to
prosecutorial misconduct in violation of his constitutional rights.

The controlling rule on the issue of alleged improper conduct by the prosecutor is that in
order to warrant relief in habeas corpus a prosecutor's misconduct must have been such that it "so

15

infected the trial with unfairness as to make the resulting conviction a denial of due process."

Donnelly v. De Christoforo, 416 U.S. 637, 643 (1974); Caldwell v. Russell, 181 F.3d 731 (6th Cir. 1999).

> On habeas review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct was 'so egregious so as to render the entire trial fundamentally unfair' . . . This court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt.

Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997)(citation omitted).

The Sixth Circuit has applied a two-part analysis to determine whether the conduct of a prosecutor rises to the level of a due process violation. United States v. Carter, 236 F.3d 777, 783 (6th Cir. 2001); Boyle v. Million, 201 F.3d 711, 717 (6th Cir. 2001). It must first be determined whether the prosecutor's remarks were "improper," an assessment which may turn on whether the prosecutor merely argued "reasonable inferences from the evidence," as is permitted, Byrd v. Collins, 209 F.3d 486, 535 (6th Cir. 2000), as opposed to misstating the evidence, which is not, United States v. Carter, supra at 784. It follows that a prosecutor is not permitted to argue to the jury any facts which are either prejudicial or not in evidence. Byrd v. Collins, supra at 535.

If the remarks of the prosecutor have been found to be improper, then this Court must apply the four-factor test set forth in United States v. Carroll, 26 F.3d 1380, 1385 (6th Cir. 1994) to determine "whether the impropriety was flagrant," which in turn amounts to deprivation of constitutional rights. United States v. Carter, supra at 783. The four factors to be applied are: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was

16

strong."  <u>Ibid</u>.

In a habeas corpus context, application of the foregoing is altered by the requirement that this Court defer to the findings of the state courts on petitioner's claims of prosecutorial misconduct.  <u>Bowling v. Parker</u>, 344 F.3d 487, 512 (6th Cir. 2003), citing <u>Macias v. Makowski</u>, 291 F.3d 447, 453-54 (6th Cir. 2002) ("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights.  But this case is before us on a petitioner for a writ of habeas corpus.  So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.")  Habeas relief may only be granted on this claim if the state court's decision that the conduct of the prosecuting attorney was not unconstitutional constituted an unreasonable application of clearly established federal law.

The state appellate court rejected petitioner's claims of constitutional violation by reason of the prosecutor's reference to his arrest and jail time, holding in pertinent part:

> During opening statements, the prosecutor related the background of the dispute between Call and the Edler/Hummel household. Included in this discussion was the mention of June 3 and 4, 2002, wherein the police were called to the Edler/Hummel residence responding to allegations that Call was acting in a threatening manner.  The prosecutor then told the jury that Call was arrested on the night of June 4, 2002 and "for a couple of days, a few days they didn't see much of the Defendant.  In fact, the Defendant, after he got out of jail, proceeded not to stay next door."

> Defense counsel objected to this statement, claiming it was prejudicial to Call for the jury to know that he was in jail at a time prior to his arrest on the arson charges.  Defense counsel then moved for a mistrial.  Following a bench conference, the trial court overruled defense counsel's motion, ruling that the fact Call had been in jail would be brought out by the evidence.

* * * * *

17

> After reviewing the record, we do not find the prosecutor's comments to be improper. Call's arrest on June 4, 2002 and the subsequent days spent in jail were necessary to the prosecution's presentation of the case, as they were part of evidence of the dispute between Call and the Edler/Hummel household. The prosecution's theory of the case was that Call set the fire in retaliation of his arrest on the night of June 4, 2002. Moreover, we find that the evidence adduced at trial *did show* that Call had been in jail for a few days prior to June 7, 2002, the night of the fire. Therefore, we do not find that the prosecutor's statement prejudiced Call's rights or deprived him of a fair trial.

This Court is of the opinion that the foregoing state appellate court ruling that the conduct of the prosecutor was not improper and failed to rise to the level of a constitutional violation, did not constitute an unreasonable application of clearly established federal law. It follows that the balance of petitioner's first claim for relief must fail upon merits review.

In his second claim for relief the petitioner challenges the evidence relied upon to convict him, arguing that his conviction was against the manifest weight of the evidence and that there was insufficient evidence to convict him.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994). A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. See, Floyd v. Alexander, 148 F.3d 615, 619 (6th Cir.), cert. denied, 525 U.S. 1025 (1998); Serra v. Michigan Dep't of Corrections, 4 F.3d 1348, 1354 (6th Cir. 1993), cert. denied, 510 U.S. 1201 (1994). It is the obligation of this Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accord, Duffel v. Dutton, 785 F.2d 131, 133 (6th

18

Cir. 1986).

A claim that a conviction was against the manifest weight of the evidence presents a question of state law and does not raise a question of violation of a federal constitutional right.  <u>Tibbs v. Florida</u>, 457 U.S. 31, 47 (1982); <u>Johnson v. Havener</u>, 534 F.2d 1232, 1234 (6th Cir. 1976).

The state courts addressed this purely as a matter of state law and held:

> Call's final contention is that his conviction was based on inconsistent testimony and is against the manifest weight of the evidence.  Call argues that there was insufficient evidence to convict him for aggravated arson and even in light of the evidence presented, the jury lost its way in evaluating the credibility of the witnesses.
>
> When reviewing whether the verdict was against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether " the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387.  In making this determination, there are eight factors to consider.  These factors are whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, the certainty of the evidence, the reliability of the evidence, whether the testimony of a witness is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary.  In reviewing these factors, the reviewing court is not required to accept the incredible as true.  *State v. Apanovitch* (1987), 33 Ohio St.3d 19-23-24 (citations omitted).
>
> We note that Call fails to point out any instances of inconsistent testimony in the record.  The argument makes absolutely no mention of what witnesses contradicted others and likewise fails to identify any inconsistencies in individual witnesses' testimony.
>
> Our review of the record does not indicate that Call's conviction was against the manifest weight of the evidence.  There was ample evidence presented at trial to support the conviction.  For example, Call matched the description of the man Randy Runyon saw approach the Edler/Hummel residence just before the fire began; Call's car and license plate also matched the description given by

> Runyon; Call's clothes tested positive for gasoline; Call was captured on videotape buying fifty cents of gasoline approximately thirty minutes before the fire began; and Call had made threats to the Edler/Hummel household telling them he would burn down their house while they slept.
>
> Based on the abundance of evidence presented at trial, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice such that the conviction must be reversed.

This allegation of violation of state law fails to rise to the level of a denial of fundamental fairness and, therefore, is not cognizable in federal habeas corpus. However, if it was to be considered this Court would not find that the decision of the state appellate court was either objectively unreasonable or that it involved an unreasonable application of federal law, particularly in light of evidence that petitioner matched the description of a man seen near the residence in question just before the fire, as did his car and license plate, that petitioner's clothing tested positive for gasoline and that he had been seen purchasing it shortly before the fire began, and that he had threatened to do what he was accused of doing.

The same conclusion would be reached if this claim for relief was deemed as one alleging insufficiency of the evidence relied upon to convict petitioner.

The standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Accord, McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003); Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003). In reaching its determination as to the sufficiency of the evidence this Court may not substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses. Herrera v. Collins, 506 U.S. 390, 401-402 (1993); Jackson v. Virginia, 443 U.S.

20

at 319, n.13; <u>Brown v. Davis</u>, 752 F.2d 1142 (6th Cir. 1985).

That standard has been modified somewhat by §2254(d) in that questions of sufficiency of the evidence are mixed questions of law and fact upon which a writ may be granted only if the adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable determination of the facts in light of the evidence presented" at petitioner's trial, §2254(d)(2). <u>Starr v. Mitchell</u>, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS 25646,*9-*10 (6th Cir. October 6, 2000).

The state appellate court found the evidence sufficient to prove the elements of the crimes charged. In so doing, the state appellate ruling, which relied on state authorities, neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented.

The foregoing establishes that petitioner's second claim for relief is without merit.

Petitioner's third, twelfth and fourteenth claims for relief will be considered together as they each assert that his constitutional rights were violated by reason of the state courts' failure to provide him with the transcripts and audiotapes he requested.

The factual predicate of petitioner's claim is flawed in light of the fact that the petitioner *was* provided a free copy of transcripts and the court *had* provided him access to his audiotapes if he paid a $20 fee for cassette tapes, as was established by the state supreme court in its ruling on petitioner's appeal of the lower appellate court's denial of his petition for writ of mandamus:

> In April 2004, Call filed a petition in the Court of Appeals for
> Marion County for a writ of mandamus to compel his trial-court

21

judge, Marion County Court of Common Pleas Judge Richard M. Rogers, to provide him access to an "unmolested/unaltered certified copy of the original audiotapes" of his criminal trial, "free of costs." Call claimed entitlement to the requested records under the Public Records Act, R.C. 149.43. Judge Rogers had denied Call's motion for audiotapes because the court had already provided a free copy of the transcripts to Call.

In May 2004, appellee, Judge Robert D. Fragale, who had been appointed to fill Judge Rogers's unexpired term, filed an answer and moved for judgment on the pleadings. Judge Fragale specified that there were 16 microcassette tapes of prior proceedings involving Call and that they would be provided to him for $20, the cost for blank tapes to make the copies. In June 2004, the court of appeals granted Judge Fagale's motion and dismissed Call's petition.

This cause is now before the court upon Call's appeal as of right.

For the following reasons, Call's appeal is meritless.

R.C. 149.43 does not require a public-records custodian to provide copies of records free of charge; instead, the Public Records Act requires only that copies of public records be made available at cost. R.C. 149.43(B)(1)l *State ex rel. Edwards v. Cleveland Police Dept.* (1996), 116 Ohio App.3d 168, 169, 687 N.E.2d 315; *State ex rel. Mayrides v. Whitehall* (1990), 62 Ohio App.3d 225, 227, 575 N.E.2d 224. Judge Fragale did so by offering to make copies at the $20 cost for blank tapes.

Moreover, since Call evidently requested that the copies be mailed to him, the common pleas court could properly require him to pay the cost of postage and mailing supplies in advance. See R.C. 149.43 (B)(3) ("Upon a request made in accordance with division [B][1] of this section, a public office or person responsible for public records shall transmit a copy of a public record to any person by United States mail within a reasonable period of time after receiving the request for the copy. *The public office or person responsible for the public record may require the person making the request to pay in advance the cost of postage and other supplies used in the mailing").* (Emphasis added.)

Moreover, R.C. 149.43(B) does not require that public-records custodians provide *certified copies* of public records at cost. A

22

common pleas court clerk can charge up to $1 per page for certified copies of "pleadings, process, record, or files."  R.C. 2303.20(Z).

Finally, "[o]nly one copy of a transcript of a criminal trial need be provided to an indigent criminal defendant."  *State ex rel. Call v. Zimmers* (1999), 85 Ohio St.3d 367, 368, 708 N.E.2d 711.  Judge Rogers previously noted that Call had already been provided a free copy of the official transcripts when he requested the audiotapes.

The flawed factual predicate renders these claims without merit.

Even absent the flawed factual predicate, the state court considered these issues purely as matters of state law, and not as violation of federal constitutional rights.

As stated previously, in light of the fact that a federal habeas corpus petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution, a violation of state law may only be cognizable in federal habeas corpus if such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.  Floyd v. Alexander, supra, and Serra v. Michigan Dep't of Corrections, supra.  This Court is also obligated to accept as valid a state court's interpretation of the statutes and rules of practice of that state.  Estelle v. McGuire, supra.

These allegations of violation of state law fail to rise to the level of a denial of fundamental fairness and, therefore, are not cognizable in federal habeas corpus.  However, even if they were to be considered, this Court would not find that the decision of the state appellate court on the foregoing matters of state law was either objectively unreasonable or that it involved an unreasonable application of federal law.  Consequently, petitioner's third, twelfth and fourteenth claims for relief must fail.

In his fifth claim for relief petitioner alleges that he was denied the effective assistance of appellate counsel.

23

A petitioner claiming ineffective assistance of counsel must demonstrate that counsel's conduct was so far below acceptable standards of representation that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the trial unfair.  Strickland v. Washington, 466 U.S. 668 (1984).  See also, United States v. Bavers, 787 F.2d 1022 (6th Cir. 1985).  Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy, Strickland, 466 U.S. at 689.  Accord, Wilson v. Yukins, unreported, 1999 U.S.Dist. LEXIS 7644 (E.D.Mich. 1999).  The prejudice prong of the test may be satisfied by a showing that counsel's error deprived the petitioner of a fundamentally fair trial which resulted in a verdict lacking in reliability.  Kimmelman v. Morrison, 477 U.S. 365 (1986).

The Sixth Amendment right to effective assistance of counsel extends to appellate counsel on direct appeal of a criminal conviction.  Evitts v. Lucey, 469 U.S. 387 (1985).  The Sixth Circuit Court of Appeals has held that:

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions.  Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

McMeans v. Brigano, 228 F.3d 674, 682 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (Citations omitted.).  The failure of appellate counsel to assert claims on appeal cannot rise to the level of denial of a constitutional right unless such failure was so ill-advised as to have caused

24

petitioner to effectively have been without counsel. <u>Burton v. Renico</u>,391 F.3d 764(6th Cir. 2004). A petitioner asserting appellate counsel's failure to raise unasserted claims will not be able to establish such a showing even if the unasserted claims are deemed not to have been frivolous, if those claims are without merit. <u>Ibid</u>.

Under the AEDPA this Court must first determine whether the state court's application of the <u>Strickland</u> standard was objectively unreasonable. <u>Alley v. Bell</u>, <u>supra</u> at 400, quoting <u>Bell v. Cone</u>, 152 L.Ed.2d 914, 122 S.Ct. 1843, 1852 (2002) ("under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." (Citation omitted.)).

The state appellate court addressed petitioner's claims of ineffective assistance of appellate counsel in its opinion denying his Rule 26(B) application to reopen the appeal, finding in pertinent part:

> Upon consideration the court finds that the seven assignments of error, and various sub-issues, raised by appellant fail to show that there is a genuine issue as to whether appellant was deprived of the effective assistance of counsel on appeal. App.R. 26(B)(5). *See State v. Reed* (1996), 74 Ohio St.3d 534, applying the analysis of *Strickland v. Washington* (1984) 466 U.S. 668. Accordingly, the application should be denied.

This Court finds that the state appellate court's conclusion that the alleged actions of appellate counsel did not rise to the level of ineffective assistance was not an objectively unreasonable application of <u>Strickland</u> to the facts of this case, nor was it an unreasonable determination of the facts in light of the evidence presented, particularly considering the strong evidence against petitioner which would undermine petitioner's claims of prejudice. As a

consequence, petitioner's claim of ineffective assistance must fail.

In light of all the foregoing, it is recommended that petitioner's first, fourth, sixth through eleventh and thirteenth claims for relief be dismissed as procedurally defaulted;  that the remaining portion of his first, and his second, third, fifth, twelfth, and fourteenth claims for relief be denied on the merits; and that the petition be dismissed without further proceedings.


s/DAVID S. PERELMAN
United States Magistrate Judge


DATE:    November 27, 2006


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).